UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. WYSKIVER,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　　Defendant. | Case No.:  15cv597-LAB (DHB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 15, 16]** |

**I. INTRODUCTION**

On March 16, 2015, Plaintiff John W. Wyskiver ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for Supplemental Security Income.  (ECF No. 1.)  On August 7, 2015, Defendant filed an answer and the administrative record ("A.R.").  (ECF Nos. 12, 13.)  On October 1, 2015, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial of benefits and remand for further administrative proceedings.  (ECF No. 15.)  Plaintiff contends the Administrative Law Judge ("ALJ") committed legal error by failing to satisfy the burden at step 5 of the sequential evaluation process when the ALJ determined there are a significant number of jobs that Plaintiff can perform in the national economy.  On

November 3, 2015, Defendant filed a cross-motion for summary judgment and an opposition to Plaintiff's motion for summary judgment. (ECF Nos. 16, 17.) On November 4, 2015, Plaintiff filed a reply and response to Defendant's filings. (ECF No. 18.) The Court took the parties' motions under submission on November 25, 2015. (ECF No. 19.)

For the reasons set forth herein, after careful consideration of the parties' motions, the administrative record, and the applicable law, the Court hereby **RECOMMENDS** that (1) Plaintiff's motion for summary judgment be **GRANTED**; (2) Defendant's cross-motion for summary judgment be **DENIED**; and (3) the case be **REMANDED** for further administrative proceedings.

## II.  LEGAL STANDARDS

**A.  Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as "disabled." *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000). The five steps are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c)

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098 & n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

**B.   Scope of Review**

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 599, 601 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence." (citing *Tidwell*, 161 F.3d at 601)).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1985)). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citing *Andrews v. Shalala*, 53 F. 3d 1035, 1039-40 (9th Cir. 1995))); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id*.

/ / /

/ / /

/ / /

/ / /

## II. BACKGROUND[1]

On September 20, 2011, Plaintiff protectively filed an application for Supplemental Security Income alleging disability beginning January 14, 2010. (A.R. at 14, 132.) Plaintiff alleged in his application that he suffered from post-traumatic stress disorder ("PTSD") and anxiety due to a December 13, 2006 home invasion robbery, nightmares, back injuries including a herniated disc, spinal stenosis causing numbness in his right leg, and human immunodeficiency virus ("HIV"). (*Id.* at 132.) Plaintiff alleges he became disabled on January 14, 2010. (*Id.*) Prior to the onset of his disability, Plaintiff worked as a funeral home director. (*Id.* at 80.)

After a December 29, 2011 denial at the initial determination (*id.* at 169-73) and a June 7, 2012 denial on reconsideration (*id.* at 183-87), Plaintiff filed a timely request for hearing before an ALJ. (*Id.* at 188.) Following an April 15, 2013 administrative hearing at which Plaintiff, a medical expert, and a vocational expert testified (*id.* at 77-115), ALJ James Carletti denied Plaintiff's application on June 26, 2013. (*Id.* at 14-23.)

At step one of the sequential evaluation process, the ALJ indicated that Plaintiff "has not engaged in substantial gainful activity since September 20, 2011, the application date." (*Id.* at 16.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: HIV, degenerative disc disease of the lumbar spine, and PTSD. (*Id.*) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.*) Before conducting step four of the analysis, the ALJ noted that Plaintiff "has the residual functional capacity ["RFC"] to perform the full range of light work. [Plaintiff] can perform simple repetitive tasks, non-public, minimum contact with supervisors secondary to post-traumatic stress disorder, herniated disc disease of the lumbar spine and

---

[1] Plaintiff does not challenge the ALJ's severe impairment or RFC determinations, or his adverse credibility findings. In light of the arguments presented in the parties' cross-motions for summary judgment, the Court declines to set forth a detailed summary of Plaintiff's medical records or the administrative hearing testimony.

symptoms from the HIV virus." (*Id.* at 17.) At step four, the ALJ determined that Plaintiff "is unable to perform past relevant work as a funeral home director." (*Id.* at 21.) At the final step, by relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 22.) As a result, the ALJ concluded Plaintiff is not disabled as defined in the Social Security Act. (*Id.* at 23.)

Plaintiff requested review by the Appeals Counsel. The Commissioner's decision became final on January 9, 2015, when the Appeals Council denied Plaintiff's request for review of the ALJ's June 26, 2013 decision. (*Id.* at 1-4.)

## III. DISCUSSION

The sole issue here is whether or not the ALJ committed legal error at step five of the sequential evaluation process.

Plaintiff contends the ALJ erred by not satisfying the burden at step five of the sequential evaluation process. (ECF No. 15-1 at 3:15-7:22.) Specifically, Plaintiff contends the ALJ improperly relied on the testimony of the vocational expert when arriving at the conclusion that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Plaintiff further contends that because the vocational expert, who had testified that Plaintiff could perform work as a "production inspector" and "assembler," had failed to provide the *Dictionary of Occupational Titles* ("DOT") numbers associated with those job descriptions, the ALJ's reliance on the vocational expert's testimony was legally erroneous in violation of Social Security Ruling 00-4p.[2] However,

---

[2] Social Security Ruling 00-4p "emphasizes that before relying on [vocational expert] or [vocational specialist] evidence to support a disability determination or decision, [ALJ's] must: [1] Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] or [vocations specialists] and information in the *Dictionary of Occupational Titles* . . . and [2] Explain in the determination or decision how any conflict that has been identified was resolved."

Plaintiff incorrectly argues that the ALJ improperly relied on the vocational expert's testimony that Plaintiff can perform the occupations of "production inspector" and "assembler." Although the ALJ summarized the vocational expert's testimony, the ALJ did not rely on that testimony in reaching the decision that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. at 22.) Rather, the ALJ relied on the Medical-Vocational Guidelines, albeit erroneously, as discussed below.

In the cross-motion for summary judgment, the Commissioner contends the ALJ properly relied on the Medical-Vocational Guidelines instead of the vocational expert's testimony. (ECF No. 16-1 at 3:20-5:5.)

### A. Legal Standards

"Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability." *Tackett*, 180 F.3d at 1100. If the claimant successfully makes a prima facie showing of disability, at step five of the sequential evaluation process "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* (quoting 20 C.F.R. § 404.1560(b)(3)). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

> There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "*disabled*" and therefore entitled to disability benefits.

*Tackett*, 180 F.3d at 1099.

### 1. Vocational Expert

"The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (citing *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)). "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring) (citing *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987)). "The vocational expert is then called upon to 'translate[] factual scenarios in to realistic job market probabilities' by testifying, on the record, to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring) (quoting *Gamer*, 815 F.2d at 1280).

### 2. Medical-Vocational Guidelines

Alternatively, the ALJ may satisfy the step five burden of showing that a claimant can perform work by relying on the Medical-Vocational Guidelines, commonly referred to as "the grids." *See* 20 C.F.R. pt. 404, subpt. P, app. 2; *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citing *Tackett*, 180 F.3d at 1101). The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). The grids categorize jobs based on exertional or physical strength requirements.[3] Each table sets forth combinations of age, education, and

---

[3] "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: '[m]aximum sustained work capacity limited

work experience, and for each combination directs a finding of either "disabled" or "not disabled" based upon the number of jobs in the national economy for someone with the listed characteristics. *Id.* at 1115; *see also Lockwood*, 616 F3d at 1071 ("The grids are matrices of the 'four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" (quoting *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983))); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) ("When the grids match the claimant's qualifications, 'the guidelines direct a conclusion as to whether work exists that the claimant could perform.'" (quoting *Heckler*, 461 U.S. at 462)). Reliance on the grids "allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims." *Tackett*, 180 F.3d at 1101 (citing *Heckler*, 461 U.S. at 460-62).

When a claimant suffers only exertional limitations, the ALJ must use the grids. *Lounsburry*, 468 F.3d at 1115; 20 C.F.R. § 404.1569a (b). On the other hand, when a claimant has only non-exertional limitations[4], "the grids are inappropriate, and the ALJ

---

to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and [m]aximum sustained work capacity limited to medium work.'" *Tackett*, 180 F.3d at 1101 (quoting 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00).

[4] Non-exertional limitations, which "are limitations that do not directly affect a claimant's strength," *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988), include "mental, sensory, postural, manipulative, or environmental limitations . . . that affect a claimant's ability to work." *Id.*; *see also* 20 C.F.R. § 404.1569a(c); *Tackett*, 180 F.3d at 1101 (explaining that non-exertional impairments include "poor vision or inability to tolerate dust or gases."); *cf. Desrosiers*, 846 F.2d at 579 (Pregerson, J., concurring) ("Pain may serve as either an exertional or a non-exertional limitation. Pain is an exertional limitation when it directly affects a claimant's strength (for example, when the neurological sensation of pain literally prevents a claimant's muscles from lifting an object). Pain is a non-exertional limitation when it does not affect a claimant's strength, but nonetheless affects a claimant's ability to work (for example, when a claimant's muscles enable him or her to lift an object, but the claimant is so distracted by the pain that he or she realistically cannot perform the work.").

must rely on other evidence." *Id.* If a claimant has both exertional and non-exertional limitations, the grids may be used as a framework for decision making. 20 C.F.R. § 404.1569a(d).

> [S]ignificant non-exertional impairments . . . may make reliance on the grids inappropriate. . . .
>
> However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. . . .
>
> . . . A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.

*Desrosiers*, 846 F.2d at 577 (citations omitted).

**B.     Analysis**

There are "strict limits" on when the Commissioner may rely on the grids. *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring). An ALJ may substitute the grids for vocational expert testimony only when the grids "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101. In other words, for the grids to apply, "a claimant must be able to perform the *full range* of jobs in a given [exertional] category." *Id.*; *see also Burkhart*, 856 F.2d at 1340 ("[T]he grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present."). Because "the grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ('exertional limitations')[,] they may not be fully applicable" when the claimant has non-exertional limitations. *Lounsbury*, 468 F.3d at 1115 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00(e)). Mere allegations of a non-exertional limitation, however, do not preclude application of the grids. Rather, the non-exertional limitations must be "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Burkhart*, 856 F.2d at 1340 (quoting *Desrosiers*,

846 F.2d at 577; *see also Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988) ("[W]here . . . a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities.").

In *Hargrove v. Astrue*, No. CV 09-8553-MLG, 2010 U.S. Dist. LEXIS 42044 (C.D. Cal. April 29, 2010), the court concluded that the ALJ's reliance on the grids was inappropriate where the ALJ determined the claimant could perform medium work but, due to the claimant's mental condition (*i.e.*, bipolar disorder), the claimant was limited to "simple routine work tasks" and "limited contact with co-workers, supervisors and the general public." *Id.* at *8. The court reasoned:

> The grids do not completely describe these nonexertional limitations, which would preclude [claimant] from performing the full range of work at any exertional level. As such, it was improper for the ALJ to rely on the grids at step five rather than taking vocational expert testimony. *See, e.g.*, *Holohan*, 246 F.3d at 1208-09 (ALJ committed legal error by relying on grids where claimaint's [sic] only severe impairments were psychiatric); *Tackett*, 180 F.3d at 1103-04 (vocational expert testimony necessary because claimant's need to shift, stand up, or walk around every thirty minutes is significant nonexertional limitation not contemplated by grids); *Polny*, 864 F.2d at 663-64 (grids inapplicable because, although claimaint [sic] was "capable of performing a wide range of jobs," he could not perform ones that were "highly stressful," that "require[d] comprehension of complex instructions," or "require[d] dealing with the public"); *Burkhart*, 856 F.2d at 1341 & n.4 (grids inapplicable because they did not account for the claimaint's [sic] need to avoid stressful environments, his inability to regularly use his hands, or his vision problems).

*Hargrove*, 2010 U.S. Dist. LEXIS 42044, at *8-9.

Similarly, in *Castro v. Astrue*, No. EDCV 09-1966-MLG, 2010 U.S. Dist. LEXIS 49970 (E.D. Cal. May 19, 2010), the ALJ concluded that the medical evidence established the claimant suffered from the severe impairments of psychotic disorder and substance abuse, and the claimant retained the RFC to perform a full range of work at all exertional levels but with the non-exertional limitation of performing simple, repetitive tasks. *Id.* at

*8. After finding that the claimant had no past relevant work, the ALJ relied on the grids and concluded there existed jobs in significant numbers in the national economy that the claimant could perform and, as a result, a finding of "not disabled" was warranted. *Id.* The court reversed the Commissioner's decision and remanded for further administrative proceedings because "the ALJ erred by neglecting to obtain vocational expert testimony on the issue of whether there existed work in the national economy that [the claimant] could perform and instead relying solely on the grids." *Id.* at *5-6. The court reasoned that the ALJ's reliance on the grids was improper because, "while [the claimant] had an RFC to perform a full range of work at all exertional levels, her psychiatric impairments limited her to 'simple, repetitive tasks,'" and "[t]he grids do not completely describe these nonexertional limitations, which would preclude her from performing the full range of work at any exertional level. As such, it was improper for the ALJ to rely on the grids at step five rather than taking vocational expert testimony." *Id.* at *8 (citing *Tackett*, 180 F.3d at 1103-04; *Polny*, 864 F.2d at 663-64; *Burkhart*, 856 F.2d at 1341 & n.4).

In the present case, the ALJ made the same error as in *Hargrove* and *Castro*. Specifically, the ALJ initially found the medical evidence established that Plaintiff suffers from the following severe impairments: HIV, degenerative disc disease of the lumbar spine, and PTSD. (A.R. at 16.) The ALJ then found that Plaintiff retained the RFC "to perform the full range of light work" with the following non-exertional limitations: "simple repetitive tasks non-public, [with] minimum contact with supervisors secondary to [PTSD], herniated disc disease of the lumbar spine and symptoms from the HIV virus." (*Id.* at 17.) However, these non-exertional limitations would preclude Plaintiff from performing the full range of light work. Therefore, the grids are inapplicable because they do not "*completely and accurately* represent [Plaintiff's] limitations." *Tackett*, 180 F.3d at 1101; *see also Burkhart*, 856 F.2d at 1340 ("[T]he grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present."); *Jones*, 760 F.2d at 998 ("The very fact that the ALJ chose to call a vocational expert indicates his implicit assumption that [claimant's] claim could not

be decided by grids alone.").

The Commissioner argues that "the ALJ permissibly concluded that Plaintiff's non-exertional limitations were not sufficiently severe to require vocational expert testimony." (ECF No. 16-1 at 4:2-3.) The Commissioner cites to *Razey v. Heckler*, 785 F.2d 1426 (9th Cir. 1986), and *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983), in support of the contention that "the ALJ reasonably found that Plaintiff's limitations in social interactions and to simple, repetitive (*i.e.* unskilled work) did not significantly affect his vocational capabilities." (ECF No. 16-1 at 4:20-22.) However, both cases serve to reinforce that the ALJ's reliance of the grids was improper. In *Razey*, the Ninth Circuit recognized that "[t]he regulations do not . . . preclude the use of the grids when a nonexertional limitation is alleged. They explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations." 785 F.2d at 1430 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00(e)). However, in that case the Appeals Council found the medical evidence was insufficient to support the claimant's assertion of non-exertional limitations (*i.e.*, that he suffered a reduced pain threshold due to his psychiatric disorder) and, thus, the Appeals Council properly concluded that the claimant's alleged "nonexertional limitations did not so affect [his] residual capacity that the use of the grids was inappropriate." *Id.* Similarly, in *Odle*, the claimant's alleged non-exertional limitations (*i.e.*, deafness, dizziness, and drug dependence) "were found not to significantly limit [the claimant's] exertional capabilities." 707 F.2d at 440.

Here, in contrast, and contrary to the Commissioner's assertion, the ALJ did not conclude that Plaintiff's non-exertional limitations do not significantly limit his vocational capabilities. Rather, the non-exertional limitations, which resulted from Plaintiff's severe impairments of PTSD, degenerative disc disease, and HIV, limit Plaintiff to simple repetitive tasks in a non-public setting with minimum contact with supervisors. These findings are inconsistent with the ability to perform a *full range* of light work. Accordingly, the ALJ's reliance on the grids was insufficient to meet the Commissioner's burden at step five. The ALJ should have instead relied on the testimony of a vocational expert. *See*

13

*Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001) (ALJ required to obtain testimony from a vocational expert where the claimant suffered from severe back pain amounting to a "significant non-exertional limitation."). These errors warrant remand for further administrative proceedings.[5]

## B. Remand for Further Proceedings Is Appropriate

The Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citing *Winans v. Bowen* 853 F.2d 643, 647 (9th Cir. 1987)). Remand is the appropriate remedy "[i]f additional proceedings can remedy defects in the original administrative proceeding." *Id*. at 176 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

Here, the ALJ committed legal error when he relied on the grids rather than on the testimony of a vocational expert at step five of the sequential evaluation process. Therefore, remand is appropriate. On remand, the ALJ cannot solely rely on the grids to complete step five of the sequential analysis. *See Tackett*, 180 F.3d at 1101-02 (citing *Desrosiers*, 846 F.2d at 577 (Pregerson, J., concurring)). Additionally, the ALJ must inquire about the DOT numbers before relying on the vocational expert's testimony. *See Massachi*, 486 F.3d at 1153.

---

[5] The Court notes that although a vocational expert testified during the administrative hearing, the ALJ did not obtain the DOT numbers associated with the occupations the vocational expert stated Plaintiff could perform, *i.e.,* "production inspector" and "assembler." (A.R. at 112-13.) The ALJ erred by failing to inquire about the DOT numbers. *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) ("[T]he ALJ did not ask the vocational expert whether her testimony conflicted with the *Dictionary of Occupational Titles* . . . [t]hus, [the court] cannot determine whether the ALJ properly relied on her testimony."); Social Security Ruling 00-4p ("When a [vocational expert] or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] or [vocational specialist] evidence and information provided in the DOT."). The Court advises the Commissioner that, on remand, vocational expert testimony unaccompanied by adequate reference to the DOT is insufficient to satisfy the Commissioner's burden at step five.

## IV. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** that (1) Plaintiff's motion for summary judgment be **GRANTED**, (2) Defendant's cross-motion for summary judgment be **DENIED**, and (3) the case be **REMANDED** for further administrative proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than March 28, 2016**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: March 14, 2016

DAVID H. BARTICK
United States Magistrate Judge